UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-76-HAB |
| ) | |
| CODY M. CLEM ) | |

**OPINION AND ORDER**

Defendant Cody Clem pled guilty to a violation of 18 U.S.C. §922(a)(6), admitting that he knowingly made a false and fictitious statement to a licensed firearms dealer intending to deceive the firearms dealer about the lawfulness of the sale. (ECF Nos. 23, 28). Defendant now moves to withdraw that plea and dismiss his indictment, arguing that the statute under which he was charged and pled guilty to is unconstitutional under *N.Y. Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), and Judge Miller's opinion in *United States v. Holden*, 638 F. Supp. 3d 931 (N.D. Ind. 2022). (ECF No. 48). Because the *Holden* decision was on appeal at the time Defendant's motion was filed, the Court held the motion under advisement. On June 16, 2023, the Seventh Circuit issued its opinion in *United States v. Holden* ("*Holden II*"), 70 F.4th 1015 (7th Cir. 2023). Later, Holden filed a petition for cert from the Supreme Court and this Court further delayed ruling on the Defendant's motion pending the resolution of the petition. (ECF No. 84). The Supreme Court has now denied the petition, *Holden II*, *cert. denied*, No. 23-5726, 2023 WL 7475243 (U.S. Nov. 13, 2023), making *Holden II* the controlling authority here. The Court has reviewed the initial briefs, the supplemental briefs, and the notices of supplemental authority filed by the parties (ECF Nos. 48, 50, 52, 53, 57, 58, 59, 71, 73, and 74), and now finds that the motion to withdraw the guilty plea and to dismiss the indictment will be denied.

**I.        Factual Background**

In December 2019, Defendant was charged in state court with residential entry and pointing a firearm. The charges followed his arrest after he unlawfully entered a stranger's home and pointed a firearm at an occupant. While his state court charge was pending, Defendant went to Riverside Sporting Goods, a licensed firearms dealer located in Marion, IN. Defendant filled out ATF Form 4473, seeking to buy a Diamondback 9mm pistol. He answered "No" to the question asking if he "was under indictment or information in any court for a felony." He then signed the form, certifying that his answers were "true, correct, and complete." But his answers weren't true and led to his indictment in December 2020 for making a materially false statement to a licensed firearms dealer in violation of 18 U.S.C. §922(a)(6).

Defendant pleaded guilty to the federal charge on June 14, 2022. Nearly ten days later, the Supreme Court decided *Bruen*. Following the *Bruen* decision, Judge Miller decided *Holden*, discussed *infra*, leading to Defendant's motion to withdraw his guilty plea and dismiss the indictment.

II.     **Legal Analysis**

   a.  **Can Clem show a "fair and just" reason to withdraw his guilty plea?**

Although the parties spend most of their briefs arguing about whether *Bruen* invalidates the statute to which the Defendant pleaded guilty, the Court must first decide whether Clem has sufficient grounds to permit him to withdraw his guilty plea. "A defendant has no absolute right to withdraw a guilty plea before sentencing." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015). Federal Rule of Criminal Procedure 11(d)(2)(B) states that a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." The defendant bears "a heavy burden of persuasion" in showing that a fair and just reason exists. *Collins*, 796 F.3d at 834.

2

The Seventh Circuit has recognized three general grounds that merit withdrawal of a guilty plea: "where the defendant shows actual innocence or legal innocence, and where the guilty plea was not knowing and voluntary." *United States v. Graf*, 827 F.3d 581, 583 (7th Cir. 2016). The colloquy required by Federal Rule of Criminal Procedure Rule 11 is designed to ensure that a defendant's guilty plea is entered knowingly and voluntarily. *See* Fed. R. Crim. P. 11(b)(1). "'Once a proper Rule 11 colloquy has taken place, the 'fair and just' ... escape hatch is narrow.'" *Collins*, 796 F.3d at 835 (quoting *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010)).

Clem argues that a marked shift in the law justifies the withdrawal of his plea. He asserts that *Bruen* and subsequent jurisprudence changed the law about the constitutionality of 18 U.S.C. §922(a)(6), the charge to which he pleaded guilty. Thus, he believes the Court should permit him to withdraw his guilty plea and dismiss the indictment against him.

In response, the Government asserts that *Bruen* did not interpret any federal statute: "[A]t most *Bruen* 'signified that a change in the law [is] possible as it relates to the federal statutes.'" ECF No. 50 at 4, quoting *United States v. Mays,* 593 F.3d 603, 607 (7th Cir. 2010). The Government also argues that Defendant is not "actually innocent" of the charge he pleaded guilty to as he factually admitted at his guilty plea that he committed the offense. But the Government's arguments assume that *Bruen* did not decriminalize Clem's conduct – which is the very question Clem is asking the Court to resolve.

The Court agrees that a change in the law does not always create a "fair and just reason" to grant a defendant's request to withdraw his guilty plea. *See United States v. Sahlin,* 399 F.3d 27, 31 (1st Cir.2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea."); *United States v. Cortez–Arias*, 425 F.3d 547, 548 (9th Cir. 2005) (stating that "a favorable change in the law does not entitle a defendant

3

to renege on a knowing and voluntary guilty plea"); *United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005) ("To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system."). But "where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense, application of this rule is misplaced." *United States v. Andrade*, 83 F.3d 729, 731 (5th Cir. 1996). Clem argues that applying the *Bruen* analysis to §922(a)(6) could yield a conclusion that he is actually innocent and that he did not violate any federal law. Because the Court agrees that *if* Clem shows that a *Bruen* analysis invalidates §922(a)(6), he would have a "fair and just" reason to withdraw his plea, the Court moves on.

    b. **Does *Bruen* invalidate 18 U.S.C. §922(a)(6)?**

The answer is no, but the Court must say more. In *Bruen*, the Supreme Court announced a new test for judging the constitutionality of firearm regulations. The Supreme Court rejected the two-step analysis that had emerged following *District of Colombia v. Heller*, 554 U.S. 570 (2008), calling it "one step too many." *Bruen*, 142 S. Ct. at 2127. Instead, the Supreme Court announced the following standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 2129–30 (quotations omitted).

The Supreme Court spent very little time in *Bruen* explaining how to assess whether the Second Amendment's plain text covers an individual's conduct. This, presumably, is because that determination is usually straightforward.

The statute here provides:

(a) It shall be unlawful –

…

(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;

\* \* \* \*

18 U.S.C. § 922(a)(6). The penalties for a violation of this statute are found in 18 U.S.C. §924(a)(2): "Whoever knowingly violates subsection (a)(6)… section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

Defendant argues largely that § 922(a)(6) infringes on the Defendant's Second Amendment right to keep and bear arms. Stated another way, because the false statements criminalized by § 922(a)(6) condition firearm possession on impermissible criteria, such as being under indictment, it must fall within the scope of the Second Amendment. The Court cannot agree.

The facts in *Holden* are markedly like this case. When Holden tried to buy a firearm, he was required—as was the Defendant here—to complete an ATF Form 4473. *Holden II*, 70 F.4th at 1016. When asked whether he was under indictment or information for a crime punishable by imprisonment for a year or more, "he answered 'no,' but that answer was false." *Id.* After pleading guilty, Holden sought to withdraw his plea so that he could argue that § 922(n)—"It shall be

unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year" to receive a firearm shipped in interstate commerce—violated the Second Amendment under the Supreme Court's decision in *Bruen*. *Id.* Judge Miller granted the motion, dismissed the indictment and ruled that § 922(n) was invalid. *Id.*

True, *Holden* dismissed the indictment, but relevant here, it was not because he found § 922(a)(6), which criminalizes making false or fictitious statements of material fact in connection with the acquisition of a firearm or ammunition, an unconstitutional gun regulation. Rather, Judge Miller concluded that the statute requiring the allegedly false information, 18 U.S.C. § 922(n), was unconstitutional under *Bruen*. *Holden*, 2022 WL 17103509, at *5. Because the information required in the unconstitutional § 922(n) was "immaterial" for the purposes of § 922(a)(6), *Holden*, 2022 WL 17103509, at *7, Judge Miller held that the indictment in that case did not state an offense. *Id*.

On appeal, the Seventh Circuit reversed, characterizing the "main problem" with the district court's decision to be that "Holden was not charged with violating § 922(n). He was charged with making a false statement to a firearms dealer, in violation of § 922(a)(6)." *Holden II, 70 F.4th* at 1017. Holden did not argue that his lie did not affect the dealer's willingness to sell him a gun. Rather, he asserted that the lie was not material to the lawfulness of the sale, because—in his view—the statute that created the status about which he lied was unconstitutional. *Id.*

The Seventh Circuit disagreed noting that "neither the Supreme Court nor any court of appeals has deemed § 922(n) void." *Holden II*, 70 F.4th at 1017. Thus, in its view, "[s]omeone who wants a court to take such a step should file a declaratory-judgment action rather than tell a lie in an effort to evade detection that the sale would violate the statute." *Id.* Bolstering its position, the Seventh Circuit noted:

6

> Congress is entitled to require would-be purchasers to provide information—their names, addresses, Social Security numbers, criminal histories, and so on. We may assume that the Second Amendment would prevent enforcement of a statute saying, for example, that "anyone whose surname starts with the letter H is forbidden to possess a firearm." But that would not prevent Congress from demanding purchasers' real names. So too with Social Security numbers: the Constitution may block the federal government from limiting gun ownership to people who have Social Security numbers, but it would not interfere with the use of such numbers to identify, and perhaps check the criminal history of, people who do have them. The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns.

*Id.* Finally, the Seventh Circuit explained, "[m]any decisions of the Supreme Court hold that false statements may be punished even when the government is not entitled to demand answers—when, for example, compelling a truthful statement would incriminate the speaker." *Id.* (collecting cases). Thus, in the Seventh Circuit's view "[t]he word 'material' in § 922(a)(6) does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem." *Id.*

Even now to the extent that Defendant tries to assert in his supplemental filings that the underlying statute criminalizing gun possession by individuals under indictment, §922(n), is constitutionally infirm under *Bruen*, it doesn't help him here. *Holden II* puts to bed the notion that lying on a firearms form is justified if the underlying statute is later declared unconstitutional. This reveals the true problem for Defendant; truthful information statutes are not firearms statutes. They are, instead, perjury statutes. Defendant's right to bear arms is not addressed, much less infringed, by § 922(a)(6), so the statute cannot be unconstitutional under *Bruen*. As the Seventh Circuit also noted in *Holden II*, "this is not the proceeding in which to adjudicate a contention that any particular application of § 922(n) violates the Second Amendment." 70 F.4th at 1018. The Motion to Dismiss is therefore, DENIED.

**III.     Conclusion**

For the above reasons, Defendant's Motion to Withdraw his guilty plea and to Dismiss the Indictment (ECF No. 48) is DENIED. The status conference set for February 8, 2024, is VACATED. The Court will set the case for sentencing by separate order.

SO ORDERED on January 23, 2024.

s/ <i>Holly A. Brady</i><br>
CHIEF JUDGE HOLLY A. BRADY<br>
UNITED STATES DISTRICT COURT